UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PASQUALE RAFFONE,                         :
          Plaintiff,                      :
                                          :
     v.                                   :  Case No. 3:13-cv-1589 (JBA)
                                          :
CHRISTOPHER NUGENT,                       :
          Defendant.                      :

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #45]
AND PLAINTIFF'S MOTIONS FOR ORDER AND LEAVE TO FILE
POST DATED /SUPPLEMENTAL LOCAL RULE 56(a)2 REGARDING DISPUTED ISSUES
OF FACT [Doc. ## 61, 62]

Plaintiff, incarcerated and pro se, commenced this action in state court which Defendant removed to this Court.  Defendant is a certified canine handler officer with the Shelton Police Department. In the operative amended complaint, Plaintiff asserts claims for illegal search and seizure and use of excessive force.  Defendant has filed a motion for summary judgment.  In addition to his opposition, Plaintiff has filed motions seeking an order permitting him to listen to a dispatch recording and leave to file a supplemental Local Rule 56(a) Statement of Disputed Factual Issues.  For the reasons that follow, Plaintiff's Motion for Order is denied and his Motion for Leave to File Supplemental Local Rule 56(a) 2 Statement is denied. Defendant's Motion for Summary Judgment is granted in part and denied in part.

I.   Facts[1]

On December 18, 2012, the police went to 19 Maple Street in Shelton in response to a call for assistance.  Plaintiff was arrested for disorderly conduct.  As a result of this arrest, an order of protection was issued requiring Plaintiff to refrain from assaulting, threatening, harassing, following, interfering with or stalking his girlfriend, Ms. Overton.

On March 5, 2013, Plaintiff was arrested for an incident that occurred in February 2013, and he was charged with disorderly conduct and violation of the 2012 protective order.  As a result of this arrest, a second protective order was issued on March 6, 2013.  This order required Plaintiff to refrain from assaulting, threatening, harassing, following, interfering with or stalking Ms. Overton; to stay away from Ms. Overton's home, 19 Maple Street, Shelton; to not contact Ms. Overton in any manner; and to stay 100 yards away from

---

[1] The facts are taken from Defendant's Local Rule 56(a) Statement and the exhibits filed in support of and in opposition to the motion for summary judgment.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Although Defendant provided the required notice informing Plaintiff of his obligation to respond to the motion for summary judgment and the contents of a proper response, along with copies of Federal and Local Rule 56, Plaintiff did not file a proper Local Rule 56(a)2 Statement, but sought an extension of time to respond to the motion, and later submitted a supplemental exhibit to his memorandum, he has however not submitted a proper Local Rule 56(a)2 Statement. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

Ms. Overton.  Plaintiff was aware of and understood the terms and conditions of the 2013 protective order.

On March 19, 2013, Defendant observed Plaintiff traveling toward 19 Maple Street.  Defendant verified that the no-contact protective order remained in effect and drove to an area where he could observe 19 Maple Street.  Plaintiff parked his truck on a side street perpendicular to Maple Street within 100 yards of 19 Maple Street and Defendant saw Plaintiff leave his vehicle and approach 19 Maple Street.  Plaintiff entered the basement to retrieve tools he had stored there.

Defendant and another police officer knocked at the door of 19 Maple Street and asked Ms. Overton if Plaintiff was at the residence. Ms. Overton permitted the officers to search her residence for Plaintiff.  During the search, the officers learned that the basement was accessible only through a door in the backyard.  Ms. Overton consented to a search of the basement.

When they reached the basement door, Defendant saw recent footprints in the snow leading to the basement steps and noted that the lock to the interior basement door was broken and the door was ajar.  The basement was dark.  Believing that Plaintiff was hiding in the basement, Defendant decided to utilize his police dog to search the basement for Plaintiff.  Before sending the dog into the basement, Defendant made several announcements that he was a police

3

officer, that there was a police dog present, and that the dog would be released if whoever was in the basement did not come out.   No one responded to the announcements.   The dog was released and located Plaintiff hiding under a tarp in the corner of the basement. Plaintiff states that Defendant ordered the dog to attack him after he had surrendered.   Defendant contends that the dog bit Plaintiff while attempting to subdue him.   Plaintiff was taken to the Shelton Police Department where emergency medical technicians treated the dog bite.   Plaintiff's skin was broken in two places.   The technicians dressed the wound and described the injuries in their report as "soft tissue swelling and bruising."   Plaintiff did not request further medical treatment from Defendant.   The technicians noted that Plaintiff had full range of motion in his arm and no circulation issues.   No doctor has diagnosed any nerve damage resulting from the bite.

II.   <u>Standard of Review</u>

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.   <u>See</u> Rule 56(a), Fed. R. Civ. P.; <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola</u>

Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. Zigmund v. Foster, 106 F. Supp. 2d 352, 256 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).  The nonmoving party "must offer some hard evidence

showing that its version is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). In addition, where the parties offer contradictory versions of the facts, one of which is "blatantly contradicted by the record," the court should not adopt the unsupported version when ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007).

III. Discussion

   In his amended complaint, Plaintiff asserts two claims against Defendant. First, he contends that Defendant conducted an illegal search and seizure because he lacked probable cause to enter the property at 19 Maple Street, Shelton, Connecticut. Second, he alleges that Defendant used excessive force against him by ordering his dog to bite Plaintiff after Plaintiff had surrendered.

   A.   Defendant's Motion for Summary Judgment

      1.   Search and Seizure

   Defendant first argues that Plaintiff lacks standing to challenge the search of the residence or basement. In addition, he contends that even if the search could be challenged, it was justified under an exception to the Fourth Amendment's warrant requirement.

   To establish standing to challenge a search, a plaintiff must demonstrate that he had a "subjective expectation of privacy" in the place searched, and that his "expectation of privacy is one that society accepts as reasonable." United States v. Hamilton, 538 F.3d

162, 167 (2d Cir. 2008).  A person has a subjective expectation of privacy if he has a property or possessory interest in the place searched.  A plaintiff can demonstrate such an interest by showing that "he owned the premises or that he occupied them and had dominion and control over them by leave of the owner."  United States v. Williams, Civ. No. 3:05CR191 (CFD), 2007 WL 4302971, at *3 (D. Conn. Dec. 6, 2007) (citing Jones v. United States, 362 U.S. 257, 267 (1960)).  If the plaintiff did not own, occupy or assert dominion or control over the premises at the time of the search, he lacks standing to challenge the search.  See id. (citing United States v. Villegas, 899 F.2d 1324, 1333 (2d Cir. 1999)).

"'Wrongful presence' at the scene of a search," however, renders a person unable to object to the legality of that search.  Rakas v. Illinois, 439 U.S. 128, 141 n.9 (1978) (citing Jones, 362 U.S. at 267); see, e.g., United States v. Cortez-Dutrieville, 743 F.3d 881, 885 (3d Cir. 2014) (holding that defendant lacked standing to challenge search of his child's mother's residence, where he was staying in violation of a protective order); United States v. Conshafter, No. 12cr22, 2012 WL 3236755, at *2 (E.D. Tex. Jul. 25, 2012) (finding defendant lacked standing to challenge search of his wife's residence where protective order prohibited him from going within 100 yards of the residence); United States v. Dye, No. 1:10cr221, 2011 WL 1595255, at *5 (N.D. Ohio Apr. 27, 2011) (finding

defendant lacked standing to challenge search of residence where protective order prohibited defendant from contacting the owner of the residence); United States v. Brown, 484 F. Supp. 2d 985, 992-93 (D. Minn. 2007) (finding defendant lacked standing to challenge search of property where defendant had been prohibited from entering subject property for one year).

In this case, Plaintiff conceded in his deposition that there was a no-contact protective order in place that required him to stay away from 19 Maple Street and to stay 100 yards away from Ms. Overton. (See Pl.'s Dep., Ex. B to Def.'s Loc. R. 56(a)1 Stmt. [Doc. #45-5] at 28-30.)  Thus, Plaintiff was wrongfully on the property and lacks standing to challenge the search.  Defendant's motion for summary judgment is granted as to the claim for illegal search and seizure on the ground that Plaintiff lacks standing to assert this claim.

### 2.   Use of Excessive Force

Plaintiff contends that Defendant used excessive force against him by ordering his police dog to attack after Plaintiff had surrendered.  The use of excessive force by police officers violates the Fourth Amendment's prohibition against unreasonable seizures. See Graham v. Connor, 490 U.S. 386, 395 (1989).  To prevail on his excessive force claim, a plaintiff must show that the amount of force used was objectively unreasonable, either as to when or how the force was applied, and that, as a result of the use of force, he suffered

8

some compensable injury.  <u>See id.</u> at 396; <u>Maxwell v. City of New York</u>,
380 F.3d 106, 108 (2d Cir. 2004).  Whether a given quantum of force
is excessive depends on "the facts and circumstances of each
particular case, including the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he is actively resisting arrest or
attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396.

Plaintiff has submitted his affidavit stating that the dog found
him hiding under a tarp in the basement and was sitting near
Plaintiff, whose arms were raised in the air "in a surrendered
position" when "Officer Nugent gave his command for K-9 [J]ager to
. . . 'attack.'" (Pl.'s Aff. [Doc. # 50] ¶¶ 32, 37, 38, 43.) "At that
point, K-9 [J]ager leapt and locked onto [Plaintiff's] right bicep."
(<u>Id</u>. ¶ 44; <u>see id.</u> ¶¶ 47-49.)  Defendant's  affidavit and a copy of
the police incident report he filed both state that when there was
no response to his instruction to come out of the basement, he
"released Jager, giving him the commands 'search him out, get him.'"
(Def.'s Aff., Ex. A to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 45-4] ¶ 33.)
Defendant states he then heard yelling and saw the dog biting into
a pile of clothes and boxes.  (<u>Id</u>. ¶ 34.) When he entered the basement
"Jager was biting plaintiff's right bicep."  (<u>Id</u>. ¶¶ 35-36; <u>see also</u>
Incident Report, Ex. F to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 45-9]

9

at 2–3.)[2]  This contradictory testimony of the circumstances under which the dog was deployed to bite plaintiff demonstrates a genuine issue of material fact regarding whether the canine force used was excessive.

Defendant's citation to out-of-circuit cases relating to the use of police dogs with fleeing felons are unavailing.  See Foskey v. Little, No. 09-535-SLR, 2011 WL 3438415 (D. Del. Aug. 5, 2011) (to apprehend a fleeing suspect is reasonable and, if the handler follows proper procedures, a resulting dog bite does not constitute use of excessive force).  Reed v. Wallace, No. 12-CV-1948(PSJ/JSM), 2013 WL 6513346 (D. Minn. Dec. 12, 2013) (use of a police dog to locate a suspect believed to be hiding in heavily wooded area with minimal visibility not unreasonable). In this case, Plaintiff is not arguing that using a police dog to search the basement was unreasonable.  Rather, he contends that ordering the dog to attack him after he surrendered was an unreasonable use of force.

Because there is a genuine issue of fact regarding the circumstances under which the order to attack was given, Defendant's motion for summary judgment is denied on this claim.  See Kavazanjian v. Rice, No. 03-CV-1923(FB)(SMG), 2008 WL 5340988, at *4 (E.D.N.Y. Dec. 22, 2008) (denying summary judgment on excessive

---

[2] Although Defendant submits a portion of Plaintiff's deposition transcript, he omits the two pages on which Plaintiff would have described his version of the circumstances surrounding the dog bite.  See Pl.'s Dep. (omitting pages 53-54).

force claim where parties disagreed about whether plaintiff was
subdued at time police dog was released); see also Priester v. City
of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified
immunity in excessive force case where officer allowed police dog
to attack arrestee who was already subdued and lying on the ground);
McGovern v. Village of Oak Lawn, No. 01 C 3772, 2003 WL 139506, at
*7 (N.D. Ill. Jan. 17, 2003) (denying summary judgment on plaintiff's
excessive force claim where plaintiff was hiding under a trailer,
attempted to surrender, and then was bitten by police dog).

   B.   Plaintiff's Motions

   Plaintiff has filed two motions.   In the first motion, entitled
Motion for Order [Doc. # 61], he seeks a court order requiring the
warden to permit him to listen to two CDs that he obtained in
discovery. Plaintiff explains that he intends to file a supplemental
memorandum in opposition to Defendant's motion for summary judgment,
but can only do so after he listens to the CDs.   The first CD contains
Defendant's call to the dispatcher, which Plaintiff contends could
be relevant to Defendant's hot pursuit claim.   However, as the Court
does not address the hot pursuit claim in considering the motion for
summary judgment, further briefing to address this claim is not
required.   The second recording is a 911 call from December 2012.
Plaintiff states that he made the call, but that his girlfriend
claimed in her deposition that she made the call.   While this

information could bear on the girlfriend's credibility should she testify at a trial, it is not relevant to oppose Defendant's motion for summary judgment.

Moreover, the Court does not have jurisdiction to order the warden to permit Plaintiff to listen to the CDs, as Plaintiff has requested, because the warden is not a party to this action. See Doctor's Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 302 (2d Cir. 1999) (court cannot generally issue an order against a person who is not a party). For all of these reasons, Plaintiff's Motion for Order is denied.

In his second motion [Doc. # 62], Plaintiff seeks leave to file a "Post Dated/Supplemental Local Rule 56(a)2 re[garding] Disputed Issues of Material Fact" after he gains access to a CD defense counsel was supposed to send to the warden. In support of the motion, Plaintiff notes that the Court previously extended the deadline for his opposition to Defendant's motion to summary judgment to twenty-one days after Defendant submits sends the CD to the warden. Although Plaintiff correctly cites the Court's previous order, his motion for leave to file a supplemental 56(a)2 Statement is denied as moot in light of the Court's denial of summary judgment on the excessive force claim—the only claim to which the CD would have been relevant.

Plaintiff also notes in his motion that he has been denied copies

12

of deposition transcripts and cannot afford to purchase them.  To the extent Plaintiff is requesting free copies of transcripts, that request is denied. Even if Plaintiff were proceeding in forma pauperis in this case, he would not be entitled to free copies of deposition transcripts.  See Garraway v. Morabito, NO. 9:99CV1913(HGM), 2003 WL 21051724, at *7 (W.D.N.Y. May 8, 2003) (informing pro se plaintiff that in forma pauperis status does not waive costs of litigation such as discovery expenses).

IV.  Conclusion

    Plaintiff's Motion for Order **[Doc. # 61]** is **DENIED as MOOT**. His Motion for Leave to Submit a Supplemental Local Rule 56(a)2 Statement of Disputed Factual Issues **[Doc. # 62]** is **DENIED**. Defendant's Motion for Summary Judgment **[Doc. # 45]** is **GRANTED** as to the claim for illegal search but **DENIED** as to the claim for use of excessive force.  The Court will appoint counsel to represent Mr. Raffone, and the case will proceed to trial on the excessive force claim. Following the filing of an appearance by incoming counsel, the Court will schedule a telephonic status conference.

                **It is so ordered.**

                    /s/
                Janet Bond Arterton
                United States District Judge

**Dated this 15th day of January 2016 at New Haven, Connecticut.**